LENORE M. NASH, BY HER NEXT FRIEND, WALTER A. NASH, AND WALTER A. NASH IN HIS OWN RIGHT, PLAINTIFFS, v. WEST JERSEY AND SEASHORE RAILROAD COMPANY, AND FURMAN MULFORD, OR IN THE ALTERNATIVE WEST JERSEY AND SEASHORE RAILROAD COMPANY, OR FURMAN MULFORD, DEFENDANTS.

MARY E. KEEFER, PLAINTIFF, v. WEST JERSEY AND SEASHORE RAILROAD COMPANY, AND FURMAN MULFORD, OR IN THE ALTERNATIVE WEST JERSEY AND SEASHORE RAILROAD COMPANY, OR FURMAN MULFORD, DEFENDANTS.

Decided March 10, 1930.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH and CAMPBELL.

For West Jersey and Seashore Railroad Company, *Bourgeois & Coulomb*.

For the plaintiffs, *Boyle & Archer* (*William T. Boyle,* of counsel).

PER CURIAM.

Because the two cases grew out of the same accident, they were tried together, by consent of counsel, at the Camden

County Circuit Court, which trial resulted in a verdict for the plaintiff Lenore M. Nash for $1,000; for her father, Walter A. Nash, $200, and for Mary Keffer, in her action, $1,000, against the defendants.

On behalf of the defendant railroad company, application was made to the trial judge for a rule to show cause why the verdicts rendered in favor of the plaintiffs should not be set aside and a new trial granted.

A rule to show cause was allowed in each case, and under each rule the following *reasons* are presented by counsel of defendant why the verdict should not be set aside and a new trial granted.

It is to be noted that the reasons assigned in each case are identical.

(1) Because the verdict rendered by the jury was against the clear weight of the evidence, as to the question of liability, and was the result of passion, prejudice or mistake.

(2) Because the trial court refused to charge defendants' requests, numbers one, two, three, four, five and six.

It may be well to state here that the several reasons presented by defendant's counsel for a new trial, based upon the court's refusal to charge certain requests, namely, that the mere statement of the requests by figures, without stating the substance of the requests presented, is not in compliance with the settled practice, and will not be considered by the court.

Counsel of defendants, in their brief, have, however, abandoned the reasons founded on the refusal to charge the requests, and say: "The only point which will be discussed is that upon the question as to whether the bridge ceased to open after it once began to open. The verdict was against the greater weight of the evidence."

The two plaintiffs, Miss Nash and Miss Keffer, on July 20th, 1927, were passengers on a small excursion boat running from Wildwood to Cape May. The defendant company operated and maintained a bridge over Grassy Sound. The boat in making the trip was required to pass in a southerly direction through the drawbridge. At the point in question,

the channel of Grassy Sound runs practically north and south, and the railroad east and west.

The boat was going in a southerly direction. It is conceded that its proper course was through the westerly side of the channel, and this was the course that the boat took.

For the plaintiff it is contended that the draw was out of repair; that the employes of the railroad company were engaged in putting it in proper condition; that the boat, on which Miss Nash and Miss Keffer were riding, when it was a quarter of a mile or more from the drawbridge, blew the signal whistle for the draw to open, then proceeded on its way; that shortly after the signal was given the draw began to open, and when the boat was almost at the entrance of the draw, the draw ceased moving, not leaving space enough for the boat to pass through.

For the defendant company it is contended that the draw, after it started to open, continued to do so, and that the accident was caused because the boat was traveling at an improper rate of speed, and hence, reached the draw before it ought to have done so, and that the captain of the boat, Furman Mulford, one of the defendants, was solely responsible for the situation and the accident which resulted.

It appears from the state of the case that Captain Mulford put in no defense, and that damages were assessed against him by the jury on his default. But we are not concerned with this since the defendant Mulford is not complaining.

The testimony in the case was conflicting, as it usually is in every case, there being opposing versions of how the accident happened, and as each version derives some support, in a measure, from the testimony and circumstances, it was a typical case for a jury to decide.

We cannot say from a fair reading of the testimony that the verdicts of the jury were so clearly against the weight of the evidence that they were the product of mistake, partiality, prejudice or passion.

Each of the rules to show cause is discharged, with costs.